IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD D. NORTON, JR., #242735, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:10-CV-703-MEF |
| | ) | [WO] |
| | ) | |
| LOUIS BOYD, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Ronald D. Norton, Jr. ["Norton"], an indigent state inmate currently incarcerated at the Bullock Correctional Facility. In the instant complaint, Norton challenges the constitutionality of actions taken against him upon his transfer to Easterling Correctional Facility in March of 2010. Specifically, Norton alleges that the defendants confiscated personal property from him in violation of his due process and equal protection rights, placed him in the Restricted Privilege Dorm absent due process, denied him due process in a disciplinary action for possession of contraband, conspired against him, and violated state law. *Complaint - Doc. No. 1* at 3. Norton names Louis Boyd, Phelix Woods, Wayne Rodgers, Dexter Baldwin, Joel Tew, Larry Peavy and Gwendolyn Babers, all correctional officials employed at Easterling at the time of filing, as defendants in this cause of

action.[1] Norton seeks a declaratory judgment and monetary damages for the alleged violations of his constitutional rights.  *Id*. at 4.

The defendants filed an answer, special report and supporting evidentiary materials addressing Norton's claims for relief.  The court thereafter informed Norton that the defendants' special report may, at any time, be treated as a motion for summary judgment and explained to Norton the proper manner in which to respond to a motion for summary judgment.  *Order of November 5, 2010 - Doc. No. 16*.  Pursuant to the aforementioned order, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[1]In the style of the complaint, Norton incorrectly identifies defendants Rodgers and Peavy as Rogers and Peevy. For purposes of this Recommendation, the court will use the correct names of these individuals.

and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324;  Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.*  "'Shall' is also restored to express the direction to grant summary judgment." *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*,

498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).  Consequently, to survive the defendants' properly supported motion for

summary judgment, Norton is required to produce "sufficient [favorable] evidence" which would

be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the

evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly

probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be enough of a

showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*,

477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573,

1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise

insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a

motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A

plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are

insufficient to withstand summary judgment.");  *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir.

1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do

more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Norton fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III.  DISCUSSION[3]

### A.  Absolute Immunity

Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing and under the facts of this case, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994.

### B.  Alleged Violations of Administrative Regulations

Norton alleges that the defendants failed to follow administrative regulations governing

---

[3]This Recommendation is limited to those claims presented by Norton in the complaint, as any other claims are not properly before the court.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgement stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with [applicable procedural rules].  A plaintiff many not amend [his] complaint through argument in a brief opposing summary judgment.").

7

confiscation of property and procedures for conducting a disciplinary hearing. *Complaint - Doc. No. 3* at 3.   To state a viable claim for relief in a 42 U.S.C. § 1983 action, the conduct complained of must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution. *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999); *Parratt v. Taylor*, 451 U.S. 527 (1981); *Willis v. University Health Services, Inc.*, 993 F.2d 837, 840 (11th Cir. 1993).   Alleged violations of departmental rules or regulations do not assert a violation of an inmate's constitutional rights. *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995); *Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987).   Consequently, the defendants are entitled to summary judgment on this  claim.

### C.  Loss of Property

Norton complains that correctional officials at Easterling improperly confiscated and destroyed his personal property on March 22, 2010 "without due process of law." *Complaint - Court Doc. No. 1* at 3.   Under well settled law, this claim entitles Norton to no relief.

> If the [items of personal property were] not returned because of [the defendants'] negligence, there has been no unconstitutional deprivation of property.  *See Daniels v. Carr*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (negligent loss of property does not rise to the level of a constitutional violation.) If [the defendants have] intentionally refused to return the [property], plaintiff has not alleged a constitutional violation.  In *Hudson v. Palmer* the Court ruled that an 'unauthorized intentional deprivation of property by a state employee does not constitute a violation of the Due Process Clause ... if a meaningful postdeprivation remedy for the loss is available.'  104 S.Ct. at 3202, 82 L.Ed.2d at 407.

*Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986); *Holloway v. Walker*, 790 F.2d 1170, 1173-1174 (5th Cir. 1986) (finding no breach of federally guaranteed constitutional rights, even where high level state employee intentionally engages in tortious conduct, as long as the

state system as a whole provides due process). This court has routinely and consistently applied the holding of *Rodriguez-Mora* to dismiss due process claims brought by inmates challenging actions of state officials regarding deprivations of their property. *McClellan v. Alabama*, Civil Action No. 2:11-CV-466-ID, 2011 WL 3423940 (M.D. Ala. 2011); *Flournoy v. Culver, et al.*, Civil Action No. 1:10-CV-104-ID, 2010 WL 916577 (M. D. Ala. 2010); *Dunklin v. Riley, et al.*, Civil Action No. 2:06-CV-1063-MEF, 2009 WL 3624706 (M.D. Ala. 2009); *Malone v. Boyd, et al.*, Civil Action No. 2:09-CV-217-TMH, 2009 WL 1064903 (M.D. Ala. 2009); *Carter v. Valeska, et al.*, Civil Action No. 1:08-CV-858-TMH, 2008 WL 5245618 (M.D. Ala. 2008); *Salmon v. Turner*, Civil Action No. 1:08-CV-554-TMH, 2008 WL 3286982 (M.D. Ala. 2008); and *Todd v. Jones, et al.*, 3:07-CV-1021-WKW, 2007 WL 4510340 (M.D. Ala. 2007).

The State of Alabama, through its Board of Adjustment, provides a meaningful post-deprivation remedy for Norton to seek redress for the loss of his property. *Ala. Code* § 41-9-60 *et seq*. Consequently, Norton's allegations that the defendants violated his constitutional right to due process upon the confiscation/disposal of his property, whether such was the result of negligence or an intentional act, entitles him to no relief from this court. The defendants are therefore entitled to summary judgment on this claim.

### D. Equal Protection

Norton alleges that the actions of the defendants with respect to the confiscation and destruction of his property constituted "discrimination against him ... [because] other inmates have the same kind of property as plaintiff property and [these] other inmates still have their property on them...." *Complaint - Doc. No. 1* at 3. The court construes this allegation as one

seeking relief under the Equal Protection Clause.  This claim, however, provides no basis for relief to Norton.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed....  The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'... nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  In order to present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006).  "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact.... Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects

upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Norton bears the burden of producing evidence which would be admissible at trial sufficient to show that the action of the defendants resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279. The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment, nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment). Instead, the law is clear that the plaintiff must present significant probative evidence of intentional discrimination to preclude summary judgment in favor of the defendants. *Anderson*, 477 U.S. at 249.

The defendants adamantly deny they undertook any adverse action against Norton in violation of his equal protection rights. Specifically, the defendants maintain that they confiscated and disposed of Norton's property in accordance with administrative regulations in effect at Easterling, as the property constituted contraband and Norton could not under any

11

circumstances maintain the property in his possession.

Assuming *arguendo* that he can demonstrate the similarly situated element, Norton's equal protection claim nevertheless fails

> because [Norton] has not alleged ... that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest. He has not even claimed that he was treated differently from others because of race, religion, or national origin. *See Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful administration ... of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett,* 924 F.2d 829, 835 (9th Cir.1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require ***identical*** treatment. There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises: it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results." (internal quotation marks omitted)); *see also Cruz v. Skelton,* 543 F.2d 86, 92-93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet*, 467 F.3d at 1319 (emphasis in original).

Norton has failed to present evidence, significantly probative or otherwise, that race or some other constitutionally impermissible factor constituted a motivating factor in the actions of the defendants about which he complains. Other than Norton's self-serving, conclusory allegation that the defendants violated his equal protection rights, the record is devoid of any evidence that the defendants acted in an intentionally discriminatory manner. Moreover, the only evidence before the court indicates that the actions of the defendants occurred solely due to

Norton's violation of administrative rules.  The allegations presented by Norton do not warrant an inference of discriminatory intent as the showing of a disparate impact upon inmates is insufficient to demonstrate an equal protection violation.  *Sweet*, 467 F.3d at 1319;  *E & T Realty*, 830 F.2d at 1114-1115; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994).  Furthermore, the arbitrary application of administrative rules does not constitute a violation of the Constitution.  *E & T Realty*, 830 F.2d at 1114.  Norton has failed to set forth a deprivation of equal protection with respect to the confiscation/disposal of his property.  Thus, the defendants are entitled to summary judgment on the equal protection claim.

### E.  Placement in Restricted Privilege Dorm and Disciplinary Proceedings

On March 22, 2010, Norton entered Easterling Correctional Facility upon his transfer from Kilby Correctional Facility.  Easterling is a smoke/tobacco free institution which prohibits the use or possession of tobacco products anywhere on the property or within the facility. Consequently, tobacco products and other related items are considered contraband at Easterling.

Upon Norton's arrival at Easterling, a routine search of his property was undertaken by defendant Rodgers.  Prior to initiating the search, Rodgers advised Norton that he was required to relinquish all contraband, including any tobacco products, in his possession.  In accordance with this instruction, Norton gave Rodgers four cans of Skoal, a brand of smokeless tobacco. Rodgers then commenced a search of Norton's property.  During this search, Rodgers observed a brown paper bag in Norton's property and noticed that the bottom of this bag appeared to have been altered.  Rodgers separated the bottom of the bag and located loose tobacco, matches, rolling papers and a striker.  Rodgers completed his search and discovered no other contraband.

13

Based on the discovery of tobacco products during the search, correctional officials placed Norton in the Restricted Privilege Dorm pending disciplinary action for a violation of Rule #64 - Possession of Contraband.

On March 23, 2010, Rodgers initiated disciplinary action against Norton for possession of contraband. *Defendants' Exhibit 7 - Doc. No. 15-7* at 3. On this same date, Officer Thomas Bailey, served Norton with notice of the disciplinary charge and the scheduled date for the disciplinary hearing related to this charge. *Id*. Upon completion of the noticed disciplinary hearing, during which Rodgers provided testimony regarding the circumstances underlying the charge and Norton advised he was "guilty" of the offense, the hearing officer found Norton guilty of possession of contraband. *Id*. at 4. The sanctions imposed upon Norton for this disciplinary infraction consisted of the loss of all privileges – e.g., canteen, telephone and visitation privileges – for forty-five days, and placement in disciplinary segregation for the same period of time. *Id*.

Norton complains that his placement in the Restricted Privilege Dorm prior to a disciplinary hearing deprived him of due process. Norton also alleges that the defendants deprived him of due process in the disciplinary proceedings conducted on the possession of contraband charge.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See*

14

*Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g.,*

*Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding

that a prisoner is entitled to due process prior to being transferred to a mental hospital).   The

second is when the state has consistently given a certain benefit to prisoners (for instance, via

statute or administrative policy), and the deprivation of that benefit 'imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life.'   *Sandin,*

515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct.

2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time

credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984)

(explaining how the state creates liberty interests).   In the first situation, the liberty interest exists

apart from the state; in the second situation, the liberty interest is created by the state."   *Bass v.*

*Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more

adverse conditions of confinement.   *Sandin*, 515 U.S. at 485-486 (disciplinary confinement of

inmate in segregation does not implicate a constitutionally protected liberty interest); *Hoskins*

*v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate] suffered because of his

disciplinary conviction (demotion in status, segregation, and transfer) raise no due process

concerns."); *see also Meachum v. Fano,* 427 U.S. 215, 225 (1976) (No liberty interest arising

from Due Process Clause itself in transfer from low-to maximum-security prison because

"[c]onfinement in any of the State's institutions is within the normal limits or range of custody

which the conviction has authorized the State to impose."); *Olim v. Wakinekona*, 461 U.S. 238,

15

245-246 (1983) (prisoner has no constitutional right to be confined in a particular institution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). In addition, a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, the deprivations imposed upon Norton did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*. This court must therefore determine whether the actions about which Norton complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court opined,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty

protected by the Due Process Clause.  The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.*  Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life."  *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

"The Restricted Privilege Dorm is established to isolate drug positive and disciplinary inmates from [the] General Inmate Population, to reduce overcrowding from the Segregation Unit, and to provide a mechanism by which an inmate can gradually earn his way back into the General Inmate Population."  *Defendants' Exhibit 11 (Standard Operating Procedure for Restricted Privilege Dorm) - Doc. No. 15-11* at 1.  "The Restricted Privilege Dorm [at Easterling] is established to house ... [inmates] caught ... in possession of tobacco products" and "[i]nmates [assigned to the dorm while] under investigation for a rule infraction ... until the investigation is completed."  *Id*. at 1-2.  Inmates confined in the Restricted Privilege Dorm are not allowed to eat or socialize with inmates from other dormitories; do not have access to store/telephone/television/visiting privileges; must be escorted by an officer to/from meals and pill call; are allowed forty-five minutes of daily yard time in the exercise area of the Restricted Privilege Dorm; are allowed to maintain possession of all personal items, including religious

17

materials: receive three meals per day; are provided access to showers on a regular basis; and retain access to legal materials. *Id*. at 2.

Applying the *Sandin* inquiry, it is clear that neither due process violation set forth by Norton entitles him to any relief.  Norton's confinement in the Restricted Privilege Dorm pending investigation of the disciplinary charge and the imposition of disciplinary sanctions which included temporary loss of canteen, telephone and visitation privileges and short-term confinement in disciplinary segregation, "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id*. at 485.  In light of the foregoing, it is clear that the aforementioned actions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  Consequently, the defendants are entitled to summary judgment on  the due process claims set forth by Norton with respect to his placement in the Restricted Privilege Dorm and imposition of disciplinary action against him.

### F.  Conspiracy Claim

Norton makes the unsupported allegation that his placement in the Restricted Privilege Dorm resulted from a conspiracy among the defendants to deprive him of due process. *Complaint - Doc. No. 1* at 3.  "Conspiring to violate another person's constitutional rights violates section 1983. *Dennis v. Sparks,* 449 U.S. at 27, 101 S.Ct. at186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n.4 (11th Cir.1996)." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th 2002).  To proceed on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff 'must

18

show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991).... [T]he linchpin for conspiracy is agreement...." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992). In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants...." *Rowe*, 279 F.3d at 1283-1284.  Merely "stringing together" acts of individuals is insufficient to demonstrate the existence of a conspiracy.  *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Other than his conclusory allegation of a conspiracy, Norton presents nothing to establish an actual conspiracy, nor is this court aware of any evidence which would indicate that the defendants entered into a conspiracy to deprive Norton of his constitutional rights.  Accordingly, the court concludes that Norton's bare allegation of a conspiracy is insufficient to support a claim for relief in this 42 U.S.C. § 1983 action and  summary judgment is due to be granted in favor of the defendants on this claim.  *Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557.

### G.  Violation of State Law - Supplemental Jurisdiction

Norton asserts that the actions of the defendants violated "the statutory regulations of Title 14 Chapter 3 of the Code of Alabama 1975." *Complaint - Doc. No. 1* at 3.  Review of pendent state law claims is only appropriate upon exercise of this court's supplemental jurisdiction over a related constitutional claim.  In the posture of this case, however, the court

concludes that the exercise of supplemental jurisdiction is inappropriate.

> Two factors determine whether state law claims lacking an independent federal jurisdictional basis can be heard in federal court with a federal claim over which the court has jurisdiction.  To exercise pendent jurisdiction [or what is now identified as supplemental jurisdiction] over state law claims not otherwise cognizable in federal court, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.'"  *Jackson v. Stinchcomb,* 635 F.2d 462, 470 (5th Cir.1981) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).  *See generally* C. Wright, A. Springer & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567 pp. 443-47 (1975).

*L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).  The exercise of supplemental jurisdiction is completely discretionary.  *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims."  *L.A. Draper and Son*, 735 F.2d at 428.  In view of this court's resolution of the federal claims presented by Norton, any pendent state claim is due to be dismissed.  *Gibbs*, 383 U.S. at 726 (if the federal claim from which the state claim arises is dismissed prior to trial, the state claim should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before September 18, 2013, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner, 66*1 F.2d at 1209 (adopting pre-October 1, 1981 opinions of the Fifth Circuit as binding precedent).

DONE, this 4th day of September, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE